## WHITLEY *et al. vs.* THE STATE OF GEORGIA.

1. A charge defining riot in the language of the Code of this State in lieu of the definition at common law cannot be error, and therefore a refusal of a written request to charge the latter definition is not ground for a new trial.
2. Where the law is charged substantially to the jury, the refusal of the court to give a hypothetical illustration thereof in the language requested in writing by the defendants' counsel, is not good ground for the grant of a new trial.
3. If the evidence show that the defendants were guilty of the offense of a riot as defined by the Code of Georgia, it is immaterial that another set of rioters banded against them were also guilty, or that defendants were badly worsted in the rencounter, and there being evidence enough to support the verdict against those on trial, it will be upheld as legal without regard to what may be the result of the trial of the other set.

Criminal law.    Charge of court.    New trial.    Before Judge ERWIN.    Gwinnett Superior Court.    September Term, 1881.

Three of the Whitley family were indicted for riot. On the trial, the evidence for the state showed, in brief,

the following facts : Hodgins taught a country school. Two of his scholars became involved in a difficulty, a small girl named Summey reporting a daughter of one of the Whitley's for calling her opprobrious names. The ill-feeling thus engendered seems to have spread to the family of Miss Whitley. Her father and uncle called at the house of Hodgins and an altercation ensued. Finally Hodgins proposed to call a meeting of his patrons next day and submit the management of his school to them for approval or disapproval. This was accordingly done. The defendants came to the meeting together, each car-rying a stick. After some other matters had been con-sidered, the difficulty in the school was mentioned, and the language which Miss Whitley had been charged with using by little Miss Summey stated. The father of Miss Whitley said " Mr. Hodgins, you might have known that my daughter did not use any such language as that." Summey, the father of the accuser, went to where Whit-ley was sitting and said, " Joe Whitley, don't you call my little girl a liar (or make her out a liar, as some of the testimony runs) in my presence, if you please." Whit-ley rose stick in hand and was knocked down by one Collins who was just behind him. The meleé at once be-gan, the Whitleys being opposed by Summey and others. The Whitleys were worsted. As to the *pros* and *cons* of the difficulty the testimony for the state and that for the defense was conflicting.

The verdict was guilty. Defendants moved for a new trial, on the following among other grounds:

(1). Because the verdict was contrary to law and evi-dence.

(2). Because the court refused to give in charge a re-quest which set out the definition of riot according to some common law authority; but instead gave the defi-nition of riot as laid down in the Code.

(3). Because the court refused to charge as follows:

" While in common parlance the fighting of a number

of persons among themselves at the same time may be called a riot, yet two or more persons may illegally fight together under such circumstances that none of them would be guilty of riot in its technical legal sense, and yet be guilty of affray, assault and battery, stabbing, or some other penal offence, because the 'common intent' to do the same act, which is an absolutely necessary ingredient in the crime of riot, may be lacking. To illustrate this principle: If two persons should get into a sudden quarrel and fight, and each of such combatants should happen to have a friend present, and these friends should thereupon become involved in a fight between themselves, while all four might be guilty of affray, assault and battery, or some other offense, neither would be guilty of riot, for the reason that each of the four would be trying to do a different act—each trying to whip the particular man he was fighting—and therefore there would be lacking that common intent of two or more persons to do the same act without which there can be no riot.'"

The court certified in approving the grounds of the motion that he charged the law fully and only refused to give the illustration requested.

The motion was overruled, and defendants excepted.

W. E. SIMMONS, for plaintiffs in error.

A. L. MITCHELL, solicitor general, for the state.

JACKSON, Chief Justice.

The defendants were indicted for a riot, found guilty, and a new trial having been refused by the court below, they brought their case here on sundry grounds of error set out in the bill of exceptions:

1. The common law definition of a riot was asked in writing to be given in charge, and refused, but the court charged the crime as defined in our own penal Code. Surely this cannot be erroneous. If the Code and com-

mon law are the same in substance, then the defendants were not hurt, for they got the law asked for submitted to the jury; if there be a difference between the common law offense and the offense defined in our Code, of course our statute must prevail, and the refusal to charge the first and the charge of the second must be right.

2. The presiding judge is not required to give to the jury a hypothetical illustration of the law in the language of a written request. He may illustrate to suit himself. It is enough that he gives the law as requested, leaving out all suppositive illustrations of the legal principle, if he see fit so to do.

3. The offense of riot was made out by the proof under the definition of the crime in our Code. It does not matter that there were two sets of rioters, and that this set now convicted was worsted in the melee that ensued. If another crowd, banded in opposition to these, was more riotous than the defendants, the presumption is that the state's counsel will see to it that they are also brought to trial, and that the court, on conviction, will apportion punishment to the aggravated conduct of those most to blame.

Judgment affirmed.